Town of Lebanon *v.* Welbar R. Heath.

The facts that a person has enlisted, been mustered into the military service of the United States, and has since deserted, may be proved by evidence other than the record.

Parol proof that such person served as a soldier for several weeks, and that he then deserted, has a legal tendency to prove the enlistment, mustering in, and desertion. Upon proof of a custom of the trade, known to the parties, by which the substitute broker was understood to warrant that the substitute was not a deserter, it will be taken that the contract was made in reference to such custom, and a warranty will be implied.

Where a town paid to such broker money for a substitute, who afterwards proved to be a deserter, and was dropped from the credit of the town, it was *held* that the sum so paid might be recovered back in an action for money had and received.

Assumpsit, with the general money counts. Also, special counts for

money paid to said defendant as a substitute broker for a substitute, who was found to be a deserter, and was not allowed on the quota of said town. Writ dated March 30, 1865, and may be referred to as part of this case. Plea, general issue.

The records of the town of Lebanon showed that on the 23d day of July, 1864, the selectmen of said town issued a warrant for a town meeting, to meet on the 9th day of August, 1864, which was duly posted, in which the second article was "To see what sum of money the town will vote to raise to pay soldiers who may be accredited to the town of Lebanon, or act thereon." And at the meeting holden in pursuance of said warrant, on said 9th day of August, the town voted "that the selectmen be authorized and directed to pay the highest bounty authorized by law, to volunteers, substitutes and representative recruits, drafted men or their assigns who may be mustered into the service of the United States, and be accredited to the town of Lebanon, and raise money for that purpose."

"*Voted*, That the selectmen be requested to use their utmost endeavors to fill the present quota of this town, in the most speedy manner and on the best terms, and that they be authorized to employ one or more agents, and pay all necessary expenses for that purpose."

Adjourned to August 13, 1864.

August 13, 1864. Met according to adjournment, and "*Voted* that the selectmen be authorized and instructed to fill the quota of this town for the present call of the President of the United States for men, and to raise money therefor."

It did not appear that any agents were appointed under this vote, by the selectmen, unless defendant was an agent under the arrangement with him as stated by witness Peck.

One Peck testified that he was a selectman of Lebanon in 1864 and 1865; that there had been several calls for men by the United States Government, and the town of Lebanon had put in men under these calls; some citizens had volunteered; they had employed one agent, a Mr. Shaw, to get men, and in other cases they had made bargains with brokers, to put men in at a certain price. Knew the defendant, he lives in Lebanon. Also knew Washington Howe. Had deal with Heath in regard to substitutes. He was a substitute broker. Met him in the road one morning early in December, 1864. He inquired, in case he should put in a couple of men for the town, if we (the selectmen,) would give him the town's note. Told him we would. He then asked what we could pay, told him $600 for substitutes and $525 for volunteers, that was the best we could do. In a day or two after, Heath brought me some papers, and we gave him the town note to one Miller, by his request, for $685, and to him another note for $515, for two substitutes put in by Heath, at $600 each. I made the following entries on town book from papers Heath then gave me: Dec. 12, 1864. Paid Heath for Washington Howe, substitute for Wm. P. Benton, $600, also paid Heath for Wm. Craft, as substitute for A. W. Bingham, $600. This was all we ever paid Heath for substitutes at any time. I think these men were not put in, in anticipation of a call for men. We did

at some time put in men in anticipation of a call, but think these two men were not thus put in.

The two notes were also introduced in evidence, both dated Dec. 17, 1864, one for $685, payable to Miller, and one for $515, payable to Heath, both on demand with interest annually, with evidence that said notes had been afterwards paid by the town to one Samuel B. Duncan. The town also put in the following receipt: "Town of Lebanon to W. R. Heath, Dr. To paid for two substitutes $1200, for two volunteers $1050. Lebanon, Dec. 24. Received payment by note. W. R. Heath."

One Fales testified that he lived in Lebanon. Was engaged in the business of substitute broker at West Lebanon from June, 1864, to the next January. Knew Heath, (defendant.) In December, 1864, he was putting in men there at West Lebanon, as a broker. D. F. Tillotson of Orford, D. B. Emerson of Hanover, and C. D. Jewett of Lebanon, were engaged with him as partners putting in men; that as far as the witness' knowledge extended it was the custom at that office at West Lebanon, if the brokers put in a deserter, or any one that owed service to the United States Government, for them, the brokers, to be responsible to the selectmen, or those with whom they contracted to put them in. It was generally talked among all the brokers there, that this was the custom universally. We advanced the pay from $25 to $75, per man, as our pay for putting in men, on account of the liability to pay back money in case of deserters and others. This was talked generally among the brokers, and was the universal rule, as far as I knew, among the brokers. I know of no exceptions to it. The brokers had a meeting, and we talked it over, that we could not afford to put men in at that price, ($25) and run such risks. I do not recollect whether Heath was present at this meeting or not, but I think his partner Emerson was present. I think all the companies were represented there, and we all made the agreement to charge $75 each man, in consequence of that risk. This agreement was made the 1st of October, 1864. Brokers generally acted in companies, one would be at Concord to get men, and another at West Lebanon to get principals. Heath generally went to Concord every day to get the men, and Emerson remained at West Lebanon to put them in. We heard soon after Heath put in these men that he had put in a deserter for Mr. Benton, and I asked Heath about it one day. He told me that he had made arrangements with Emerson to clear him, (Heath,) from any liability to the town of Lebanon on that account, that he had paid Emerson $25. Heath told me that he had the notice with him that Howe was a deserter, and that he had showed it to Emerson after he had made the trade with him.

One Cleveland testified to having similar conversations with Heath about his being notified that Howe was a deserter, and about his trade with Emerson. On cross examination he said: "I made trades specially that I would be responsible if I put in a deserter in every case, I think, where I put in men. Can't state how other folks made their agreements. I do not know of any other understanding. Don't know that I did make such agreement with every man. I did not consider it

changed my liability in the case whether I made a special contract or not. Think there were cases in which nothing was said about it, but most of the men spoke of it at the time of the contract."

One Huffman testified that he was at Concord, N. H., as a soldier in the barracks there, in September, 1863, that the man afterwards known as Washington Howe came there at that time from Portsmouth with some soldiers, and that he came into the same barracks with witness and remained there a month or more, that his name was then *James Rogers*, and that after remaining there at Concord four or five weeks, he deserted one Tuesday night.    That, next time, witness saw him was at West Lebanon, in 1864, as he was going from the provost-marshal's office to the depot to the cars, that witness then recognized him as James Rogers, but he then bore the name of Washington Howe; that as witness met him he pulled his cap down over his eyes.    Witness went and sat by the side of him in the cars, and said, " How are you, Rogers ?" but he did not answer.    Witness went to Concord with him, and he there answered to his name as Howe.    He was then taken and examined in witness' presence ; that witness had seen him when first in the barracks when changing his clothes, and had noticed an anchor and an eagle printed on him, the anchor on his breast and the eagle on his left arm, and he also had a scar on his shin where he had a fever sore.    Witness saw these same marks on him at this last examination, when he answered to the name of Howe, as he had before seen when he was known as Rogers. Howe, that night, was sent to the guard-house, but the other men who went to Concord with him at that time went into the barracks ; that witness was paid $30 for his services in thus detecting this Howe as a deserter.    Witness testified that while at Concord in 1863, he knew this Rogers well, saw him many times every day, that he bunked near him, and that he recognized him at West Lebanon, at once, when he saw him, by his countenance.

Chester Pike testified that in 1864 and 1865 he acted as provost marshal for the 3d district of New Hampshire, at West Lebanon, that Capt. Silvey was the acting assistant provost marshal general of the State of New Hampshire, at Concord, N. H., that witness received an order from Capt. Silvey in relation to said Howe.    Witness knew Capt. Silvey's hand-writing, and the order was in his hand-writing.    Defendant objected to the order as not being competent evidence to prove that Howe was a deserter, but the court admitted it, and defendant excepted.

"Office A. A. P. M. General, Concord, N. H. Jan. 9, 1865. Capt. Chester Pike, Prov. Marshal 3d District :

The following named substitute for a man in your district has been recognized as a deserter, and turned over to the proper authorities : Washington Howe, alias James Rogers, substitute for W. P. Benton of Lebanon.    You will, if you have not already, drop this deserter from the credit of the town and notify the principal of your action, and of the manner in which he is affected by it.

Very respectfully, your obedient servant,

W. Silvey, Capt. 1st U. S. Artillery,

A. A. P. M. General."

Witness testified that he afterwards received another communication from Capt. Silvey, as follows. This was objected to by defendant upon the same ground as the other, and was admitted subject to exception.

"Concord, N. H., Office A. A. P. M. G., Feb. 16, 1865.
Captain : On the 9th of January ult., you were informed by me that Washington Howe, alias James Rogers, enlisted at your office as substitute for W. P. Benton, an enrolled man in the town of Lebanon, 3d district, had been recognized as a deserter, and that the name of the principal must be restored to the enrollment lists of that town. You are now desired to give your reasons for omitting to place the name of Benton upon the lists for Lebanon.
        Very respectfully, your obedient servant,
                        W. SILVEY, Capt. 1st U. S. Artillery,
                                A. A. P. M. General.
To Capt. Chester Pike, Prov. Marshal 3d District."

Witness stated that he made reply to this communication, of which he had a copy. The same objection was made to this as to the other letters, but it was admitted subject to defendant's exception.

"February 20,          5
Captain : In answer to your letter of inquiry of the 16th inst., I have the honor to state that the name of W. P. Benton has been restored to the enrollment lists of Lebanon, and will appear in the February corrections. It was not restored in January, because immediately upon being notified that his substitute had been recognized as a deserter, he promised to furnish another substitute without delay, and it was thought that if he did this there would be no need of restoring his name, merely for the purpose of striking it off. It was, however, an oversight not to add his name to the lists at the end of the month, he not having fulfilled his agreement.
        Very respectfully, your obedient servant,
                        CHESTER PIKE, Capt. and Prov. Marshal.
To Capt. W. Silvey, 1st Artillery, A. A. P. M. G. for N. H."

Witness stated that this copy was taken only of the part written, that the letter was written on a sheet with a printed heading, stating the place, the office and blank date.
    Witness also stated that he never had any further record as to whether Washington Howe was allowed on the quota of Lebanon, that there is no other record of the disposition of Howe, except this order of Silvey, to the witness and his reply, that Howe was not allowed on the quota of Lebanon. He further stated, subject to defendant's exception, that any man known to be a deserter, or who owed service to the United States, was not allowed as a credit to any town, at his office. He also stated that there was a custom existing at his office to hold the brokers responsible for deserters, even if they passed an examination at the office and were accepted, if they were afterwards shown to be deserters, where

the brokers knew them to be deserters when they offered them; that there were cases where the brokers put in deserters without knowing it, that the matter was compromised with the towns by refunding the money paid, and sometimes the compromise was made by refunding less than the whole sum paid; that he did not allow men to do business at his office who knowingly offered a deserter as a substitute, but when we were satisfied that they did not know the fact, they were allowed to arrange, the matter with the selectmen in any way that was satisfactory to them.   Witness explained the examination that was made of substitutes at his office, and that after the men had passed all the ordeals required, if they were marked as *accepted*, they were then enlisted, and when they had signed the contract of enlistment the money was paid over to them by the broker in presence of witness, the money being counted by him, and then the substitute was sent to Concord, to be there mustered into service, and a certificate was sent to the enrolled or drafted man for whom the substitute was provided.   Witness did not know as Lebanon furnished another man in place of Howe.   Benton did not furnish another substitute.   At the close of the war Lebanon had furnished more than its quota of men—*seven* more as witness thought—but did not know whether Lebanon had any surplus when Howe was furnished as a substitute or not.   Custom in regard to brokers' responsibility for deserters was established before the Howe case arose.

Plaintiffs here rested their case, and the defendant moved for a nonsuit which was denied by the court, and the defendant excepted.   Thereupon a verdict was taken by consent for the plaintiff, subject to the opinion of the whole court, at the law term, upon the questions of law raised by defendant's exceptions.

When the three letters contained on pages 6 and 7 of the printed case were offered and objection was made, the court decided to receive the letters as evidence, subject to all the objections which the defendant chose to make, and when the evidence was all in, the court would examine this evidence in connection with the rest, and if it should be deemed competent upon any point in the case, then it would be considered by the jury on such point, otherwise it would be laid out of the case. At the close of plaintiffs' testimony, a verdict was taken by consent as stated in the case, and the court was not asked to make any farther ruling in regard to these letters.

*Morris & Rands*, for plaintiffs.

*Blaisdell, Hibbard & Lang*, for defendant.

BELLOWS, J.   The suit is brought to recover a sum of money paid by the town of Lebanon as bounty for a substitute for William P. Benton, who was drafted into the military service of the United States from that town.   The substitute, called Washington Howe, was accepted and accredited on the quota of Lebanon, and the money paid to the defendant, with whom the contract was made, he being a substitute broker. Afterwards the assistant provost marshal general having discovered that

Howe was a deserter, ordered his name to be dropped from the credit of the town, and the name of Benton restored to the enrollment lists, and this was done.

The first question is, whether the orders of the assistant provost marshal general were properly received in evidence.   As the case is amended there is no error in admitting the evidence if competent for any purpose, there having been no ruling that it was competent to prove the desertion, but only that it was to be weighed upon any point as to which it was legally admissible; and we think it was competent to show that the military authorities recognized and claimed the substitute to be a deserter, and that his name should be dropped from the credit of the town.

The next question is, whether there was any evidence tending to prove that Howe was a deserter from the military service of the United States. To make out this fact, it is necessary to prove that he had enlisted and was mustered into the service, as well as that he deserted, and of these facts there should be a record.   We think, however, that the record is not the only evidence, but that these facts may be shown by other proof.

In 3 Greenl. Evid. sec. 483, it is laid down, in respect to evidence in courts martial, which is governed by rules similar to those which apply in this court, that on a charge of desertion or other offence against military discipline, it will be sufficient to prove that the accused received the pay, or did the duties of a soldier, without other proof of his enlistment or oath; and so if an officer is charged with the breach of the particular duty of his office, proof that he acted in that character will be sufficient, without proving his commission or appointment, and see cases there cited; and this, we think, accords with the general rules of evidence recognized in this court.

The proof of enlistment and desertion is largely from the testimony of Huffman, who testified that in September, 1863, he was at Concord, N. H., as a soldier in the barracks there; that the man afterwards known as Washington Howe came there at that time from Portsmouth with some soldiers, and that he came into the same barracks with witness, and remained there a month or more; that his name was James Rogers, and that after remaining there four or five weeks he deserted one Tuesday night.   That he saw him next time at West Lebanon, in 1864, as he was going from the provost marshal's office to the depot, to the cars, that he recognized him as James Rogers, though he then bore the name of Washington Howe; that as he met him he pulled his cap down over his eyes; that witness went to Concord with him in the cars, went and sat by the side of him, and said, "How are you, Rogers?" but he did not answer; that he was taken and examined in witness' presence, and he answered to the name of Howe; and that night he was sent to the guard house, and witness was paid $30 for his services in thus detecting this Howe as a deserter.   He also testified that at Concord, in 1863, he bunked near Howe, and saw him many times every day.

This evidence, we think, has a legal tendency to prove the enlistment, mustering in, and desertion.   It tends to show that Howe did the duties of a soldier in the military service of the United States, for several

weeks, and that he afterwards deserted; and this, we think, is sufficient to sustain the verdict, so far as that point is concerned.

The remaining question is, whether the defendant can be regarded as having undertaken that the substitute was not a deserter.   Upon that point we think the evidence tends legally to prove a usage at the place of the contract, that the substitute broker was understood as warranting that the substitute was not a deserter, and that the defendant had knowledge of such usage ; and that being the case, the parties must be deemed to have contracted in reference to it, and a warranty is to be implied. Ch. on Con. 399 ; 2 Parsons on Con. 50, and note 2.  *Hutton* v. *Warner*, 1 M. & W. 466, where it was held that a custom of the country that a landlord should allow an off-going tenant pay for seed and labor on the arable land was to be considered as imported into the lease.

We are of the opinion, therefore, that there was evidence legally tending to prove a custom of the trade from which would be implied an undertaking by the defendant that the substitute furnished by him was not a deserter, and inasmuch as there was evidence tending to prove that he was a deserter, by reason of which the consideration for the payment by the plaintiff would entirely fail, the plaintiff is entitled to recover back the money so paid, in a count for money had and received.   It makes a case of an entire failure of the consideration upon which the money was paid, like an entire failure of title to personal property, and under such circumstances the money may be recovered back in this form of action. *Holden* v. *Curtis*, 2 N. H. 61, and cases cited ; *Wiggin* v. *Foss*, 4 N. H. 295 ; *Shove* v. *Webb*, 1 T. R. 732, where the title to an annuity failed in consequence of some informality in registering the memorial, the court saying that although there was no fraud, it would be unconscientious in the defendant to retain the money.

Much the same is *Stratton* v. *Rastall*, 2 T. R. 369, where the court says, when a man receives money upon a consideration which afterwards fails, the person paying it may recover it back as money received to his use.   So is *Cripps* v. *Reade*, 6 T. R. 606, and *Robinson* v. *Anderton*, Peake's Cases, 94 ; see also cases collected in note 1, to *Marriot* v. *Hampton*, 2 Esp. 546, and *Lockwood* v. *Kelsea*, 41 N. H. 185.

Here was an absolute and entire failure of the consideration for which the money was paid, as in the case of the annuities which were void for want of registry, leaving nothing in the plaintiff's hands to be returned, and there was evidence tending to prove that the defendant had notice that Howe was a deserter.   Under these circumstances, we think the plaintiff is entitled to recover back the money paid.

It is urged by the defendant that the town has not been injured, even if Howe's name has been dropped from the quota of Lebanon ; but that Benton is the person injured.   It will be perceived, however, that the money was paid by the town to Heath, for procuring a substitute that should be accepted and mustered into the military service of the United States, and be credited and allowed on the quota of Lebanon.   In this the defendant has totally failed, and the town has received no benefit whatever from the contract, and the defendant cannot conscientiously retain the money.

Whether the town shall account for any portion of the money recovered back, to Mr. Benton or any other person, is a question with which we have now nothing to do.   It is sufficient that the town has advanced to the defendant a sum of money upon a consideration that has totally failed; and there must be

*Judgment on the verdict.*